**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KEVIN LANE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WELLS FARGO BANK, N.A. et al., ) <br> ) <br> Defendants ) | 3:12-cv-00015-RCJ-VPC <br><br> **ORDER** |

Before the Court is Plaintiff's Motion for Default Judgment (ECF No. 20), Defendants' Motion to Quash Service of Process and Set Aside Defaults Against U.S. Bank, National Association and Citigroup Mortgage Loan Trust 2007-AR4 (ECF No. 23), and Defendants' Motion for Summary judgment (ECF No. 41). For reasons given herein, the Court denies the motion for default judgment, grants the motion to set aside default, denies the motion to quash service, and grants the motion for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Kevin Lane gave lender Wells Fargo a $1,295,000 promissory note secured by real property at 425 Crestview Dr., Stateline, NV 89449 (the "Property"). (Deed of Trust ("DOT") 1–3, Dec. 14, 2006, ECF No. 8, at 8). United Title of Nevada ("United Title") was the trustee, and MERS is not listed on the DOT. (*See id.* 2). Plaintiff obtained a home equity line of

credit ("HELOC") of $55,000 against the Property from Wells Fargo. (*See* HELOC DOT 1–2, Dec. 15, 2006, ECF No. 8, at 28). Wells Fargo assigned the note and DOT to U.S. Bank National Association ("USBNA"), as trustee for a mortgage-backed security. (*See* Assignment, Aug. 2, 2011, ECF No. 8, at 48). USBNA substituted National Default Servicing Corp. ("NDSC") as trustee. (*See* Substitution, Oct. 21, 2011, ECF No. 8, at 51). NDSC filed the notice of default ("NOD") as agent for Wells Fargo based on a default on the DOT of $68,702.34 as of June 15, 2011. (*See* NOD, June 16, 2011, ECF No. 8, at 44). A trustee's sale was scheduled for November 23, 2011 by NDSC. (*See* Notice of Trustee's Sale, Oct. 24, 2011, ECF No. 8, at 54).

Plaintiff sued Defendant in state court on six causes of action: (1) Unfair Debt Collection Practices Under Nevada Revised Statutes ("NRS") section 649.370; (2) Unfair and Deceptive Trade Practices Under NRS sections 41.600 and 598.0923; (3) Breach of the Covenant of Good Faith and Fair Dealing; (4) Violation of NRS section 107.080; (5) Quiet Title; and (6) Fraud. Defendants removed. The Court dismissed all claims except the section 107.080 claim because:

> NDSC filed the NOD not only before it became the trustee, but also before the assignee that eventually substituted it as trustee, USBNA, obtained the beneficial interest. Unless NDSC can show by affidavit or otherwise on summary judgment that it was in fact commanded to file the NOD on June 16, 2011 by then-beneficiary Wells Fargo, there will remain a genuine issue of material fact that NDSC was a stranger to the mortgage when it filed the NOD. NDSC's own statement of agency on behalf of Wells Fargo on the NOD is not sufficient.

(Order 4:5—11, May 14, 2012, ECF No. 31).

Plaintiff asks the Court in the present motion for default judgment to: (1) rescind the foreclosure and Notice of Default; (2) issue a declaratory judgment that Plaintiff's rights were violated; and (3) issue an order quieting title to the Property in his name "unless some party, namely: CITIGROUP MORTGAGE LOAN TRUST 2007-AR4, U.S. BANK NATIONAL

1  ASSOCIATION TRUSTEE, Dated 2/09/07, who has a right to enforce the Note and Deed of

2  Trust upon his house, comes forward in this litigation." (Mot. for Default J. 8–9, ECF No. 20).

3       Plaintiff identifies one Defendant as "CITIGROUP MORTGAGE LOAN TRUST 2007-

4  AR4, U.S. BANK NATIONAL ASSOCIATION TRUSTEE, Dated 2/09/07." (Compl. 5, ECF

5  No. 20-1). According to the "Citigroup Loan Trust 2007-AR4, Pooling and Servicing

6  Agreement," or the PSA, USBNA is the trustee to the Trust (the "Trustee"). (Resp. to Mot. to

7  Quash Serv. 4–5, ECF No. 25). The PSA requires "all directions, demands and notices

8  hereunder shall be sent . . . (e) in the case of the Trustee, [to] One Federal Street, 3rd floor,

9  Boston, Massachusetts 02110." (*Id*. at 5). It also states that the "principal corporate trust office

10  of the trustee" is the same address. (*Id.*).

11       On December 13, 2011, Plaintiff's agent attempted to serve "Citigroup Mortgage Loan

12  Trust 2007-AR4, U.S. Bank National Association Trustee" at the principal corporate trust office

13  of the Trustee. (Mot. Precipe for Default 7, ECF No. 18). Plaintiff served Amy Byrnes, the Vice

14  President of Corporate Trust at the "Mortgage Loan Trust 2007-AR4," who stated she was

15  authorized to accept service for "Citigroup Mortgage Loan Trust 2007-AR4" (the Trust). (*Id.*).

16       The Trust failed to answer, so the Clerk entered default on April 17, 2012. (*See* Entry of

17  Default, ECF No. 19). On April 19, 2012, Plaintiff filed the present motion for default judgment.

18  Citibank and USBNA then filed notices of appearance, as well as the present motion to quash

19  service of process and set aside default. Citibank and USBNA later filed the present motion for

20  summary judgment.

21  ///

22  ///

23  ///

24

## II. LEGAL STANDARDS

### A. Default Judgment

Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55.  First, the clerk must enter the party's default. Fed. R. Civ. P. 55(a).  The party seeking default judgment must then petition the court for a default judgment. *Id.* at 55(b)(2).  "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956).  A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)).  In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel*, 782 F.2d at 1471–72).

### B. Quashing Service of Process

The plaintiff bears the burden of establishing the validity of its service of process when the defendant makes a motion to dismiss for insufficient service of process. *See Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1100 (D. Nev. 2011).  If service is insufficient, the court has broad discretion to extend the time for the plaintiffs to properly serve the defendants under Rule 4(m). *See id.* at 1101 (quoting *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003)).  In

considering whether to grant an extension, a court should consider factors "like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Id.* (quoting *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007)).

### C. Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

      **A.     Motion for Default Judgment**

The decision whether to enter default judgment is within the discretion of the district court. *See Eitel*, 782 F.2d at 1471.  Courts should examine the seven *Eitel* factors in determining whether to enter default judgment. *McMillen*, 205 F.R.D. at 558.

///

///

### 1. Possibility of Prejudice to the Plaintiff

The first factor favors default judgment where the plaintiff will suffer prejudice if default judgment is not entered. *See McMillen*, 205 F.R.D. at 558. Simply delaying the resolution of the case is not prejudicial under this standard. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701. "Rather, 'the standard is whether [the plaintiff's] ability to pursue the claim will be hindered.'" *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 462 (9th Cir. 1984)); *see also Rockstar, Inc. v. Rap Star 360 LLC*, No. 2:10-CV-179-LRH-RJJ, 2010 WL 2773588, at *2 (D. Nev. July 8, 2010) (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)) (granting default judgment where defendant did not appear in court before or after the Clerk's entry of default); *MATSCO v. Hang D.D.S., Prof. Corp.*, No. 2:09-CV-2242-LRH-RJJ, 2010 WL 2681807 (D. Nev. July 1, 2010) (granting default judgment because plaintiffs continue to fail to make an appearance in court after four months); *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, Nos. 2:05-CV-1532-RLH-GWF & 2:06-CV-101-RLH-GWF, 2008 WL 2699701, at *5 (D. Nev. July 2, 2008) (entering default judgment because destroying evidence in discovery gives plaintiffs no other recourse if default judgment is not entered).

Here, Plaintiff has not received an answer after removing the case over four months ago and claims he would be prejudiced by a further delay of a decision on his claims. The prejudice against the Plaintiff must be greater than delay. He still has another recourse if default judgment is not entered because he can continue his action in the Court. Since Defendants appeared in Court, opposed the Motion for Default Judgment, and filed their own Motion to Quash Service and Set Aside Default, there is no prejudice in allowing the case to continue to be tried on its merits.

///

### 2. The Merits of the Claims and the Sufficiency of the Complaint

The second and third factors favor default judgment if the Plaintiff makes enough factual allegations to state a claim upon which relief can be granted, in accordance with Rule 8(a). *See Eitel*, 782 F.2d at 1471; *see also Rockstar*, 2010 WL 2773588, at *2 (citing *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978)). In evaluating this standard, all factual allegations in the complaint should be taken as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The court should only look at whether the complaint sufficiently states a claim for relief under Rule 8, not whether the claim would actually prevail at trial. *See Rockstar*, 2010 WL 2773588, at *2.

In denying a motion to dismiss in part, the Court has already ruled that Plaintiff's section 107.080 claim satisfies Rule 8(a). These factors therefore weigh in favor of a default judgment.

### 3. The Sum of Money at Stake

The fourth factor mitigates against default judgment when there is a substantial amount of money involved. *See Eitel*, 482 F.2d at 1472. The court compares the "the amount of money at stake in relation to the seriousness of [the d]efendants' conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, the "amount remaining on the original loan as of the date of the 'Notice of Trustee Sale' on October 25, 2011 was $1,396,386.37," which is a substantial amount of money. (Petit. for Removal 4, ECF No. 1). Since there is a substantial amount of money at stake, and the seriousness of the alleged conduct by the Defendants is also substantial, this factor weighs against granting default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The fifth factor mitigates against default judgment where there is a "possibility of a dispute concerning material facts." *Eitel*, 782 F.2d at 1471-72. Defendants still have not

1  answered.  However, they do claim that "the material facts alleged in the Plaintiff's Complaint
2  are false and fail to establish a viable cause of action against the Defendants, U.S. Bank and
3  Citigroup," since they are not part of the foreclosure of the Property. (Mot. to Quash Serv. 10–
4  11, ECF No. 23).  There is a dispute as to issues of material fact, at least as to USBNA.  As the
5  Court noted in its May 14, 2012 order, it appeared based upon the public records adduced that
6  National Default Servicing Corp. filed the Notice of Default as the purported trustee not only
7  before USBNA substituted it as trustee on the DOT, but before USBNA even had the beneficial
8  interest.  It therefore appears probable that USBNA commanded NDSC to file the NOD before
9  USBNA had the beneficial interest.  But it is still possible that the previous beneficial interest
10 holder commanded USBNA to foreclose or that it had authority to do so via an agency
11 agreement.  It is also possible USBNA had the beneficial interest at an earlier date than the
12 records so far adduced indicate.  The statutory propriety of mortgage foreclosures in Nevada is
13 fact-intensive.  This factor does not mitigate in favor of a default judgment at this stage.

14        **5.      Excusable Neglect**

15        The sixth factor favors default judgment where the default was not due to excusable
16 neglect. *See Eitel*, 782 F.2d at 1472.  Plaintiff argues that dicta in *Aristocrat Techs., Inc. v. High
17 Impact Design & Entm't*, 642 F. Supp. 2d 1228, 1234 (D. Nev. 2009) (Sandoval, J.) indicates
18 that a defendant's culpable conduct should be dispositive.  However, *Aristocrat* is the only case
19 in this District that hinted at such anapproach, while the other cases weigh excusable neglect as
20 only one *Eitel* factor. *See, e.g.*, *McMillen* 205 F.R.D. at 558 (denying a motion for default
21 judgment where there was no excuse for filing the answer late, but there was also no prejudice);
22 *see also Rockstar*, 2010 WL 2773588, at *3 (holding there was no excusable neglect, but
23 continuing to weigh all seven of the *Eitel* factors).  "A defendant's conduct is culpable if he has
24

received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (analyzing "excusable neglect" under Rule 60(b)(1)).

Defendants argue that their conduct was due to excusable neglect because Plaintiff named them improperly in the caption of the Complaint and served them improperly by serving the wrong person at the wrong address.  The caption of the Complaint named Defendants as "CITIGROUP MORTGAGE LOAN TRUST 2007-AR4, U.S. BANK NATIONAL ASSOCIATION TRUSTEE, Dated 2/09/07."  Defendants argue Plaintiff should have named them "U.S. Bank, as Trustee for Citigroup Mortgage Loan Trust," or "U.S. Bank" individually. "In the complaint the title of the action shall include the names of all the parties . . . ." Nev. R. Civ. P. 10(a).  Defendants argue that Nevada law "require[s]" the plaintiff to name solely the trustee, not the trust.  Nevada requires service upon the trustee if the party has a trustee. Nev. R. Civ. P. 4(d)(2).  The caption on its face identifies both the Trust and the Trustee.  Plaintiff's intent here is clear.  He identified both the Trust and the Trustee together in order to designate which of the Trustee's trusts (the Trust) he was suing the Trustee over.  USBNA cannot reasonably have been confused that it was being sued as trustee of the Trust in this case.

Defendant next argues that Plaintiff should have served the Trustee at the USBNA corporate headquarters in Minnesota.  Plaintiff's Affidavit of Service shows that Plaintiff served "Citigroup Mortgage Loan Trust 2007-AR4, U.S. National Association Trustee, 1 Federal Street, Boston, MA 02110." (Mot. Precipe for Default 7, ECF No. 18).  Plaintiff claims that he served the correct address because the PSA lists the corporate trust office "with respect to the Trustee, U.S. Bank National Association, One Federal Street, 3rd Floor, Boston, Massachusetts 02110." The Court finds that Plaintiff effected service at the Trustee's proper address.  Even though

1  USBNA is the Trustee in this case, and its headquarters are in Minnesota, the PSA lists the

2  principal corporate trust office of the trustee headquarters as the address that Plaintiff's agent

3  served in Massachusetts.  Therefore, the Plaintiff made service at the correct address.

4  Finally, Defendants argue that Plaintiff served the wrong person.  Amy Byrnes indicated

5  to the Process Server that she was authorized to accept service "for Citigroup Mortgage Loan

6  Trust 2007-AR4." (*Id.*).  Defendants argue Ms. Byrnes was merely authorized to accept service

7  for the Trust, but not for the Trustee, and that Plaintiff therefore never actually served the

8  Trustee, but only the Trust. (*Id.*)  The Court rejects this argument.  A trust is not a separate legal

9  entity.  Unlike a business trust, for example, which is more in the nature of a corporate entity de

10 facto if not de jure, *see generally* Nev. Rev. Stat. ch. 88A, a traditional common law trust is a

11 legal relationship between legal entities, not a legal entity in-and-of-itself.  A typical trust can

12 only act through its trustee(s) or agents thereof.

> A trust is not a legal entity.  A trust is not an entity distinct from its trustees and capable of legal action on its own behalf, but merely a fiduciary relationship with respect to property.  A trust is not a legal "person" which can own property or enter into contracts, rather, a trust is a relationship having certain characteristics.

16 76 Am. Jur. 2d *Trusts* § 3 (2005) (citing *Roberts v. Lomanto*, 5 Cal. Rptr. 3d 866 (Ct. App. 2003)

17 *Stevens Family Trust v. Huthsing*, 81 S.W.3d 664 (Mo. Ct. App. 2002); *Dennett v. Kuenzli*, 936

18 P.2d 219 (Idaho Ct. App. 1997)) (footnotes omitted).  The Court therefore rejects the argument

19 that only the Trust itself was served and not the Trustee.  In other words, to say that Ms. Byrnes

20 may accept service for the Trust *is* to say that she may accept service for the Trustee, because the

21 Trustee is the sole legal embodiment of the Trust.  By designating Ms. Byrnes as agent for

22 service of process upon the Trust, USBNA (the Trustee) effectively designated Ms. Byrnes as an

23 agent for service of process.  And even assuming that the Trust qualified as a business trust under

24

Nevada law, *see* Nev. Rev. Stat. § 88A.030, service may be had upon the registered agent of such a trust, *see* Nev. Rev. Stat. § 88A.520(b)(2). The Court need not rely on this analysis, however, because U.S. Bank and Citigroup appear implicitly to disclaim any Massachusetts business trust-type status when they argue that it is the trustee who must be served, not the Trust itself.

Moreover, Plaintiff claims that Amy Byrnes in fact accepted service on behalf of the Trustee, because the Affidavit of Service read that the Complaint was "to be served on Citigroup Mortgage Loan Trust 2007-AR4, U.S. National Association Trustee, 1 Federal Street, Boston, MA 02110." (*See* Reply to Resp. to Mot. for Default J. 5, 10, ECF No. 29). Plaintiff argues there is no other explanation as to why a "representative of the Trust indicates to the process server that they are authorized to accept service." (Resp. to Mot. to Quash Serv. 10, ECF No. 25). Nevada requires the proof of service to list "if practicable, the name of the person who was personally served or a physical description of that person." Nev. Rev. Stat. § 14.025(d). According to the Affidavit of Service, the process server informed Ms. Byrnes of the contents of the Complaint. (Mot. Precipe for Default 7, ECF No. 18). Ms. Byrnes was at the address of the principal corporate trust office of the Trustee headquarters and accepted service on "Citigroup Mortgage Loan Trust 2007-AR4, U.S. National Association Trustee." Even though she only indicated to the process server that she was authorized to accept service for Citigroup and neglected to mention USBNA (Trustee), she was at the address for the principal corporate trust office of the Trustee headquarters and accepted service on behalf of the Trustee. As a result, Plaintiff properly served the Trustee. Finally, Citigroup has had ample time to file a motion with the Court to quash service, yet none was filed until after the Clerk entered default. Therefore, there is no excusable neglect.

**6.     The Strong Policy Favoring Decisions on the Merits**

There is a strong policy in the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1472. Yet the "mere existence of [Rule 55(b)] indicates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. However, if it is reasonably possible for a case to be decided on the merits, it should be. *See Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Therefore, if "movant has a meritorious defense, doubt, if any, should be resolved" against default judgment. *Pena*, 770 F.2d at 814 (citation omitted). After weighing the seven factors, the Court finds that default judgment is not appropriate.

**B.     Motions to Set Aside Default and to Quash Service**

Because the motion for default judgment will be denied, the motion to set aside default will be granted. As explained, *supra*, however, service upon Defendants was proper. Therefore, the motion to quash service will be denied.

**C.     Motion for Summary Judgment**

First, Defendants argue that they should be granted summary judgment against the fourth claim for wrongful foreclosure, because there is no dispute as to Plaintiff's default. But unlike a common law wrongful foreclosure claim, a claim based upon a statutory defect in foreclosure does not require a lack of default. The Court has already dismissed any claim insofar as it purports to rely on a common law wrongful foreclosure theory.

Next, Defendants adduce the declaration of Robert Bateman, a Vice President of Loan Documentation at Wells Fargo who qualifies as a records custodian and who attests to personal knowledge of the relevant facts. (*See* Bateman Decl. ¶ 1, Aug. 16, 2012, ECF No. 41, at 13). Bateman attests mainly as to facts already presented to the court, however, he also attests that

NDSC was authorized by Wells Fargo to record the NOD on June 17, 2011. (*See id.* ¶ 9). Plaintiff adduces no contrary evidence. Wells Fargo was the beneficiary when NDSC filed the NOD, and Wells Fargo's records custodian Bateman testifies as to NDSC's agency.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Default Judgment (ECF No. 20) is DENIED.

IT IS FURTHER ORDERED that the Motion to Quash Service and Set Aside Default (ECF No. 23) is GRANTED in part and DENIED in part. Default is set aside, but service is not quashed.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 41) is GRANTED.

IT IS SO ORDERED.

DATED: This 2nd day of October, 2012.

_____
ROBERT C. JONES
United States District Judge